IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY JACKSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 19 C 1907 |
| | ) |
| THOMAS DART, Sheriff of Cook | ) |
| County, COOK COUNTY | ) |
| DEPARTMENT OF CORRECTIONS, | ) |
| COOK COUNTY ILLINOIS, | ) |
| and UNKNOWN DENTIST, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Anthony Jackson, who during the time relevant to this lawsuit was an inmate at Cook County Jail, has filed suit under 42 U.S.C. § 1983. Jackson sued Cook County Sheriff Thomas Dart, the Cook County Department of Corrections, and Cook County itself under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), and he also sued an unknown and unnamed dentist. Jackson contends that the defendants have a policy of refusing to provide root canal procedures to pretrial detainees even when that procedure is clinically indicated, and this policy violates his Fourteenth Amendment rights. Jackson also made references in his complaint to the defendants' alleged interference with his ability to meet with his former attorney, George Jackson III, as well as scheduling delays and chronic understaffing in the jail's dental department. Jackson did not, however, assert a separate claim based on the allegation

about restricted access to counsel. In addition, in his response to the defendants' motion for summary judgment, Jackson conceded that neither the alleged understaffing nor the scheduling delays caused his injury and limited his claim to the alleged policy barring root canals. Thus, Jackson's lawsuit at this point consists of the claim that the defendants violated his Fourteenth Amendment rights by refusing to provide him with a root canal treatment pursuant to a policy at the jail.

The defendants previously moved to dismiss Jackson's *Monell* claim. On September 10, 2019, the Court denied the motion in an oral ruling. Discovery is now complete, and the defendants have moved for summary judgment. For the reasons set forth below, the Court grants the motion.

## Background

The following facts are undisputed except where otherwise noted. Thomas Dart is the Sheriff of Cook County, and as such he is responsible for providing medical and dental care to persons detained at the Cook County Department of Corrections (CCDOC or Jail). Beginning on January 15, 2015, Jackson was housed in various units of the CCDOC. Within his first year of custody, Jackson began experiencing what eventually became a chronic toothache. It is undisputed that Jackson was prescribed pain medication whenever he was experiencing dental pain.

On November 17, 2015, Jackson had x-rays taken of his teeth that showed radiographic decay, with the decay on tooth #30 being particularly extensive.

On July 19, 2016, Jackson was seen by Dr. Thomas Prozorovsky. Dr. Prozorovsky diagnosed Jackson with irreversible caries on tooth #30 and offered an extraction, which Jackson deferred until he could see a private dentist following his

hoped-for release.  Jackson says that, at this visit, Dr. Prozorovsky told him that tooth #30 could be salvaged with a root canal.  Dr. Prozorovsky's visit notes make no mention of this.  Instead, his notes state only the following: "#30 irrev. caries; pt. defers ext. presently; is interested in seeking RCT/POM outside CCDOC with private dentist; May still reconsider ext. at later date."[1]  Dkt. 108-6 at 506.

On August 2, 2016, Jackson was seen by physician assistant Megan Smith for a routine checkup.  PA Smith noted the following:  "[Jackson] saw dental 7/19 but deferred extraction for irrev caries. states he wants a root canal, not an extraction, because he needs his tooth to donate to science when he dies. tylenol partially controls pain, but pt declined NSAIDs in the past and today." *Id*. at 553.  Shortly thereafter, Jackson was seen by physician assistant Glen Trammel for a follow-up.  Trammel noted that Jackson had a chronic toothache, had been evaluated by a dentist, received partial relief with Tylenol, and had no acute changes to his dental condition.

On October 21, 2016, Jackson was evaluated by nurse Irene Modunkwu, who noted that Jackson's mouth showed no redness, swelling, or bleeding and that he denied any dental pain.  Jackson was seen again two days later by a different nurse who noted the same.  On October 31, Jackson was seen by Tyrisha M. Clary, MD, who noted that Jackson had moist mucosa and multiple fillings and was not in any distress.  Dr. Clary ordered antibiotics prophylactically in case Jackson opted for an extraction at his next dental visit.  Jackson missed his next two dental appointments for reasons not disclosed by the record.

---

[1] RTC denotes root canal treatment, "ext." denotes extraction, and #30 denotes Jackson's tooth #30.

On January 5, 2017, Jackson was seen by Fauzia Khan, MD, who noted in her records that tooth #30 was abscessed, broken, non-salvageable, and in need of extraction. Dr. Khan ordered antibiotics and scheduled Jackson for an extraction. On January 19, Dr. Khan examined Jackson again and noted that he was non-compliant in taking his antibiotics. Dr. Khan ordered a second round of antibiotics and rescheduled the extraction.

On February 3, 2017, Jackson was seen by Dr. Khan to have tooth #30 extracted, but he refused the procedure. Dr. Khan noted that Jackson wished to save his tooth with a root canal and crown once discharged from the CCDOC. As with Dr. Prozorovsky, Jackson contends that Dr. Khan told him that tooth #30 could be saved with a root canal. Dr. Khan's visit notes state only the following: "pt signed a refusal form for the ext of #30; pt states he wants to save this tooth once discharged with a RCT and crown on #30." In opposing summary judgment, Jackson refers to this statement as explaining an "alternative course of treatment." Dkt. 110 at 7.

On February 7, 2017, Jackson was seen by Andrew Q. De Funiak, MD, and complained of dental pain. Dr. De Funiak noted in his records that Jackson refused the extraction offered by Dr. Khan and that he told Jackson his pain may not resolve until his tooth is extracted.

On February 7, 2017, Jackson was seen by Jorelle Alexander, MD, Chair of the Department of Oral Health for Cook County Health. Dr. Alexander noted that tooth #30 had large decay and extensive fractures. Dr. Alexander noted in her records that she informed Jackson that tooth #30 should be extracted and that its prognosis—even with a root canal or crown—was poor. She also noted that she informed Jackson that the

4

source of his tooth infection would not go away if tooth #30 remained and that antibiotics would not fix the problem. Jackson stated that he thought Dr. Alexander was not seasoned enough and that he wanted a second opinion from outside the County. Dr. Alexander noted that she told Jackson that she did not have the authority to make a referral to an outside clinic not under the County's umbrella. Dr. Alexander's notes also describe Jackson telling her that he could potentially win his criminal case, be discharged in five months, and obtain a root canal treatment outside the CCDOC. Dr. Alexander explained to Jackson that he needed to have treatment for tooth #30 sooner than five months out, to which Jackson responded that he did not trust the County's medical or dental care.

On February 17, 2017, Jackson was seen by Dr. Khan and again refused an extraction of tooth #30, instead opting for pain medication and mouthwash. Jackson signed a treatment refusal form on which Dr. Khan noted that she informed Jackson that tooth "#30 cannot be saved with a RCT/crown." Dkt. 108-7 at 606.

From February 18, 2017 to November 17, 2018, Jackson had no further dental appointments at the Jail. His medical records from that period contain just one reference to dental concerns or pain, on a health service request form (HSRF) collected on July 18, 2017 on which Jackson checked the box labeled "toothache" and circled a pain level of "11." Dkt. 108-6 at 272.

On November 18, 2018, Jackson submitted an HSRF complaining of dental pain, a loose tooth, bleeding gums, and swelling. On November 30, 2018, Jackson was once again seen by Dr. Khan, who noted his poor oral hygiene and abscesses on teeth #15, 20, and 30. Dr. Khan offered extractions and prescribed Jackson pain medication and

5

antibiotics. On December 6, 2018, Jackson was seen by Dr. Khan for the extractions but asked to reschedule them. The visit notes state that Jackson reported no pain.

The defendants contend that from December 7, 2018 to December 22, 2019, Jackson did not submit any HSRFs requesting dental services or complaining of dental pain and thus did not have any dental appointments at the Jail. Jackson contends in a declaration submitted with his response to the summary judgment motion that he did, in fact, submit HSRFs complaining of dental pain during this period. But in response to the defendants' request to admit that "[f]rom December 6, 2018, to December 22, 2019, you did not submit an HSRF complaining of dental pain," Jackson responded, "Plaintiff is unable to admit or deny because he does not recall." Dkt. 113-1 at 5.

On December 23, 2019, Jackson was seen by PA Trammell, who noted that Jackson had a chronic toothache but presented with no speech changes, drooling, fever, or oral bleeding. PA Trammell ordered clindamycin (an antibiotic) for Jackson and referred him to the dentist.

Finally, on January 6, 2020, Jackson was seen by Carolyn Adams-Winn, MD, who noted in her records Jackson's poor oral health and wrote the following in his visit notes: "Advised pt that #30 needs RCT or EXT. All we can do here is extract." Dkt. 108-6 at 530. Dr. Adams-Winn also noted asking Jackson why he hadn't come back in 2015 and that "he didn't really have an answer." Id. Further down on her visit notes, Dr. Adams-Winn wrote, "P: Other extraction(s) needed, restorative and FMD needed." Id. The x-rays from Jackson's visit show decay on tooth #30 extending below the bone level. Dr. Anita Lockhart, however, opines in her expert report that the "or" in Dr. Adams-Winn's note that she told Jackson that "#30 needs RCT or EXT" indicates that a

6

root canal may have been a viable treatment option for tooth #30 even as of January 2020 despite the extensive decay.

## Discussion

To prevail on their summary judgment motion, the defendants must demonstrate that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Egonmwan v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 845, 849 (7th Cir. 2010) (quotation marks omitted). The Court views the evidence and draws all inferences in favor of the nonmoving party. *See Cervantes v. Ardagh Grp.*, 914 F.3d 560, 564 (7th Cir. 2019). The nonmoving party must identify "specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Cervantes*, 914 F.3d at 564.

**A.    Dismissed defendants**

Before addressing the merits of the defendants' motion for summary judgment, the Court must clarify which defendants are in the case. In his response to the defendants' statement of material facts, Jackson admitted that he never identified the "unknown dentist" and did not name that person as a defendant or serve him or her with a summons. Jackson further admitted that the CCDOC is not a suable entity. *See Castillo v. Cook Cnty. Mail Room Dep't*, 990 F.2d 304, 307 (7th Cir. 1993). Thus, the

Court dismisses both the CCDOC and the unknown dentist as defendants.

The defendants also contend that Jackson has not offered any evidence to support his claims against Sheriff Dart. In response, Jackson contends that under Illinois law, "Illinois sheriffs have final policymaking authority over jail operations." *DeGenova v. Sheriff of DuPage County*, 209 F.3d 973, 976 (7th Cir. 2000). Because Jackson's remaining claim involves an allegation of an unconstitutional policy of the CCDOC, over which Dart has policymaking authority, the Court declines to dismiss Sheriff Dart.

**B.    Statute of limitations**

The statute of limitations for Jackson's claim is two years. *See Lewis v. City of Chicago*, 914 F.3d 472, 478 (7th Cir. 2019) ("A § 1983 claim borrows the statute of limitations for analogous personal-injury claims in the forum state; in Illinois that period is two years."). Jackson filed his complaint on March 19, 2017, but his claim accrued "as soon as [he knew] that he had been injured and thus possesse[d] a complete and present right of action." *Fendon v. Bank of Am., N.A.*, 877 F.3d 714, 717 (7th Cir. 2017). The defendants contend that the accrual date is July 19, 2016, when Jackson first learned he would not be provided a root canal for his infected tooth and that only extraction was available. Jackson contends, however, that the accrual date is no earlier than January 6, 2020, when he says Dr. Adams-Winn told him that he needed either a root canal *or* an extraction.

The Seventh Circuit has held that a continuing violation, such as a refusal to provide medical care, "continue[s] for as long as the defendants had the power to do something about [the plaintiff's] condition." *Heard v. Sheahan*, 253 F.3d 316, 318 (7th

Cir. 2001). Relying on *Heard*, Jackson contends that the continuing violation doctrine should allow him to seek damages from the first day that officials refused to provide him with necessary medical care. The defendants cite *Garrison v. Burke*, 165 F.3d 565 (7th Cir. 1999), to contend that the continuing violation doctrine does not apply when there is a two-year lull between the allegedly unconstitutional acts, as there was here. But *Heard* was decided after *Garrison*, and unlike *Garrison*—which dealt with repeated instances of sexual harassment—*Heard* dealt directly with CCDOC officials' continuous denial of medical care. The alleged wrongdoing that Jackson claims represents the same type of cumulative and ongoing harm that the continuing violation doctrine was intended to address, as he contends the various denials of root canal treatment "reinforce[d] each other." *Garrison*, 165 F.3d at 570.

Jackson's claim is therefore timely, and he may seek damages as far back as July 19, 2016.

**C.   Municipal liability**

The Court turns next to the question of the Sheriff's liability. Under *Monell*, a municipal governmental entity like the office of the Sheriff "may be found liable under § 1983 when it violates constitutional rights via an official policy or custom." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). To succeed on a *Monell* claim, a plaintiff must prove: (1) an action pursuant to a municipal policy; (2) policymakers were deliberately indifferent to a known risk that the policy would lead to constitutional violations; and (3) causation, meaning the municipal action was the moving force behind the constitutional injury. *Hall v. City of Chicago*, 953 F.3d 945, 950 (7th Cir. 2020).

9

Jackson has offered evidence sufficient for a reasonable jury to find that the denial of root canal treatment was pursuant to a CCDOC policy. The defendants appear to concede this, at least for purposes of summary judgment. Dkt. 113 at 8. The concession was wise, as there is plenty of evidence indicating that root canal treatment was denied because the CCDOC had, at the relevant time, a policy not to offer it. Dr. Alexander[2] testified during her deposition that detainees at the CCDOC are not provided root canals. Dkt. 111-5 at 49:5–22. In addition, Dr. Adams-Winn noted the following in one of her visit summaries after seeing Jackson: "Advised pt that #30 needs RCT or EXT. *All we can do here is extract*." Dkt. 108-6 at 530 (emphasis added). A reasonable jury could find based on this evidence that a policy existed.

Before getting to that point, however, Jackson has to establish a violation of his constitutional rights. "The first step in every § 1983 claim, including a claim against a municipality under *Monell*," is for the "plaintiff [to] initially prove that he was deprived of a federal right." *Hall*, 953 F.3d at 950; *see also*, *Sallenger v. City of Springfield*, 630 F.3d 499, 504 (7th Cir. 2010) ("[A] municipality cannot be liable under *Monell* when there is no underlying constitutional violation.").

Jackson contends that he should have been provided with root canal treatment for tooth #30 and that the Jail's policy of refusing to provide such treatment violated his Fourteenth Amendment rights as a pretrial detainee. To avoid summary judgment on his Fourteenth Amendment claim regarding medical care, Jackson "must demonstrate that genuine issues of material fact exist on two questions: (1) whether he suffered from

---

[2] Again, Dr. Alexander is the Chair of the Department of Oral Health for Cook County Health.

10

an objectively serious medical condition and (2) whether the medical staff's response to it was objectively unreasonable." *Williams v. Ortiz*, 937 F.3d 936, 942–43 (7th Cir. 2019). The defendants apparently concede that Jackson's medical condition was objectively serious, as they only address the second of these requirements in their motion. The Court therefore need not address that requirement.

The flaw in Jackson's argument is his focus on the appropriateness of root canal treatment. There is certainly evidence that would permit a finding that a root canal was viable in Jackson's case despite the defendants' contention that tooth #30 was not salvageable. Specifically, Jackson has testified that both Dr. Prozorovsky and Dr. Khan told him that the tooth could be saved with a root canal, and Dr. Adams-Winn's visit notes similarly suggest a root canal was a viable treatment option. Both parties have also submitted expert reports that provide contrary opinions regarding Jackson's treatment options. The defendants' expert, Dr. Olafsen, opines that in Jackson's case, "an extraction of tooth #30 was an appropriate definitive treatment." Dkt. no. 108-5 at 10. Jackson's expert, Dr. Lockhart, did not examine Jackson but bases her opinion on Dr. Adams-Winn's January 2020 after-visit note stating: "Advised pt that #30 needs RCT or EXT. All we can do here is extract." Dkt. 108-6 at 530. The "or," Dr. Lockhart opines, indicates that a root canal was a viable option for Jackson, and the second sentence in Dr. Adams-Winn's notes indicates that a root canal was denied to Jackson as part of a larger policy.

The question before the Court, however, is not whether a root canal would have been an appropriate treatment; it is whether the treatment that Jackson was offered—extraction of the tooth—was unreasonable in violation of the Fourteenth Amendment.

11

On this Jackson offers no evidence, beyond his contention that an alternative treatment (root canal) would have worked. Specifically, Jackson's expert Dr. Lockhart does not opine that extraction was an unreasonable treatment; rather she says only that, based on the dentists' statements, a root canal appears to have been an appropriate form of treatment. Dkt. no. 108-8 at 49. The furthest that Dr. Lockhart goes is to say that "nothing should universally preclude the dental department from considering a root canals [sic] as a care option for a first molar." *Id.* But that falls short of evidence that extraction was an unreasonable approach in Jackson's case.[3]

The Fourteenth Amendment "requires that [a detained person] received reasonable care, not specific care, no matter how many times they ask." *Pulera v. Sarzant*, 966 F.3d 540, 544 (7th Cir. 2020). Refusal of a detained person's preferred form of treatment—which is effectively all that Jackson has shown—"does not mean that the course of treatment was objectively unreasonable." *Williams*, 937 F.3d at 544. The treatment offered—extraction—would have resolved Jackson's tooth decay and any pain resulting from it; there is no contrary evidence. For this reason, and because Jackson has pointed to no evidence other than the possibility of an alternative treatment, no reasonable jury could find in his favor.[4]

## Conclusion

For the foregoing reasons, the Court grants the defendants' motion for summary judgment (Dkt. no. 10) and directs the Clerk to enter judgment in favor of defendants

---

[3] Jackson points to no evidence, for example, that extraction would have caused him any collateral adverse consequences.

[4] In light of the Court's conclusion, it need not address defendants' argument that Dr. Lockhart's report should be excluded.

12

and against plaintiff.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: January 9, 2023